# In the United States Court of Federal Claims
### OFFICE OF SPECIAL MASTERS
### No. 21-1653V

| | |
|---|---|
| JENNIFER L. PORTOCK,<br><br>　　　　　　　Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>　　　　　　　Respondent. | Chief Special Master Corcoran<br><br>Filed: August 13, 2024 |

*Richard H. Moeller, Moore, Heffernan, et. Al.,* for Petitioner.

*Felicia Langel, U.S. Department of Justice, Washington, DC,* for Respondent.

### RULING ON ENTITLEMENT[1]

On August 3, 2021, Jennifer Portock filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered a left shoulder injury related to vaccine administration ("SIRVA") as a result of an influenza ("flu") vaccine she received on October 21, 2020. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

For the reasons discussed below, I find that Petitioner has shown that she suffered the residual effects of her left-sided shoulder injury for more than six months – and that

---

[1] Because this unpublished Ruling contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

she otherwise meets the Table definition for a SIRVA injury, and is therefore entitled to compensation.

## I.     Relevant Procedural History

Ms. Portock filed her petition and medical record exhibits on August 3, 2021. ECF Nos. 1, 8. She filed a Statement of Completion on August 27, 2021. ECF No. 9. Petitioner was thereafter permitted to file a Motion for Ruling on the Record ("Mot."), doing so on March 2, 2023. ECF No. 32. Respondent filed a response to the Motion for Ruling on the Record and a Rule 4(c) Report ("Response") on March 28, 2023. Ex. ECF No. 28. Petitioner filed a Reply ("Reply") on March 31, 2023. ECF No. 35. This case is now ripe for adjudication. My findings and ruling are presented below.

## II.    Issue(s)

The issues presented in this case are:

(1) Whether Petitioner continued to suffer the residual effects of the SIRVA for more than six months. 42 C.F.R. § 100.3(a) XIV (Influenza vaccines); Section 11(c)(1)(D)(i) (statutory six-month requirement), and

(2) Whether Petitioner has satisfied the Table and QAI requirements for a Table SIRVA injury.

## III.   Authority

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Hum. Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this rule

does not always apply. "Written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Murphy v. Sec'y of Health & Hum. Servs.*, No. 90-882V, 1991 WL 74931, *4 (Fed. Cl. Spec. Mstr. April 25, 1991), quoted with approval in decision denying review, 23 Cl. Ct. 726, 733 (1991), *aff'd per curiam*, 968 F.2d 1226 (Fed.Cir.1992)). And the Federal Circuit recently "reject[ed] as incorrect the presumption that medical records are accurate and complete as to all the patient's physical conditions." *Kirby v. Sec'y of Health & Hum. Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021).

The United States Court of Federal Claims has outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Hum. Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

The Court has also said that medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery v. Sec'y of Health & Hum. Servs.*, 42 Fed. Cl. 381, 391 (1998) (citing *Blutstein v. Sec'y of Health & Hum. Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such fact testimony must also be determined. *Andreu v. Sec'y of Health & Hum. Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Hum. Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing Section 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Hum. Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

## IV.   Finding of Fact

I make the following findings after a complete review of the record to include all medical records, affidavits, Respondent's Rule 4(c) report, and additional evidence filed:

- Petitioner's medical history is unremarkable for any shoulder symptoms or injuries prior to the date of vaccination. *See generally* Exs. 3, 5.

- Petitioner (age 40) received the flu vaccine on October 21, 2020. Ex. 2 at 9; Ex. 5 at 14, 18. The vaccination record states that the vaccine was administered in her left shoulder. *Id*.

- A month later, on November 20, 2020, Petitioner went to the Princess Anne Diagnostic Center Radiology for a left shoulder X-ray for a "[h]istory of left shoulder pain." Ex. 16 at 9. The radiology order was signed on November 18, 2020, for "[a]cute pain of left shoulder." *Id.* Petitioner's left shoulder X-ray was normal. *Id.*

- On December 1, 2020, Petitioner saw orthopedist Sheldon Cohn, M.D., complaining of "horrible pain in her left shoulder" that began the evening of her flu vaccination.[3] Ex. 4 at 14. Petitioner reported that, although her pain had since diminished, she remained symptomatic and continued to "hav[e] difficulty with motion." *Id.*

- On exam, Dr. Cohn noted painful and reduced range of motion ("ROM") in Petitioner's left shoulder. Ex. 4 at 14. Dr. Cohn diagnosed Petitioner with "subacromial bursitis and [] a frozen shoulder secondary to her flu injection most likely introduced subacromially." *Id.* Dr. Cohn recommended a cortisone injection, which Petitioner declined, and he prescribed a Medrol Dosepak and referred Petitioner to physical therapy ("PT"). *Id.* at 15.

- On December 16, 2020, Petitioner went to Brittany Orasko, DPT, for an initial PT evaluation for left shoulder pain after her vaccination. Ex. 6 at 10. Petitioner reported that the oral steroids had "helped a little," but she was having constant pain. *Id.* Petitioner also reported that her pain was currently 4/10, and it was aggravated by motion. *Id.* She rated her pain at a 2/10 at its best, and 8/10 at its worst. *Id*. On exam, she displayed reduced left shoulder ROM and weakness, but no impingement. *Id.* at 12. The assessment stated that Petitioner's limited range of motion of her left shoulder "limits her ability to IND[pendently] perform [activities of daily living] ADL's." *Id*. at 13.

- Petitioner completed nine PT sessions and was discharged from PT on February 3, 2021, when she called to state that she needed left shoulder surgery. *See generally* Ex. 6; Ex. 6 at 36.

---

[3] On her patient registration form, under type of injury, petitioner wrote, "SIRVA in doctor's office." Ex. 7 at 16.

- On February 2, 2021, Petitioner followed up with Dr. Cohn for "what [was] felt to be significant subacromial bursitis following her flu injection." Ex. 4 at 12. Dr. Cohn noted that, after conservative treatment, Petitioner "remain[ed] markedly symptomatic." *Id.* Petitioner was assessed with bursitis of the left shoulder and adhesive capsulitis. *Id.* Petitioner again declined a cortisone injection, but was considering surgical intervention. *Id.* Dr. Cohn stated that Petitioner was "very symptomatic" and ordered a left shoulder MRI. *Id.*

- Petitioner underwent the MRI on February 16, 2021. Ex. 7 at 7. It showed a "small shallow partial articular sided tear at the infraspinatus tendon footprint and mild infraspinatus tendinosis. Prominent subadjacent subcortical cystic change and bone marrow edema at the posterior humeral greater tuberosity, which may be related to infraspinatus tendinopathy or possible periarticular osseous erosion and inflammatory arthropathy…superior labral tear." *Id*. at 8.

- On March 2, 2021, Petitioner followed up with Dr. Cohn to review her MRI. Ex. 4 at 11; Ex. 7 at 7–8. Dr. Cohn noted that Petitioner's MRI "did not reveal any other pathology," and Petitioner was to decide if she wanted surgery. *Id.*

- There are no other medical records regarding treatment of Petitioner's left shoulder since March 2, 2021.

- In her February 9, 2022 affidavit, Petitioner states that she discontinued PT "due to the out-of-pocket costs of the sessions, the lack of progress that [she] was seeing, and the fact that [she] was considering having surgery." Ex. 13 at 1. She stated that she continued to perform the stretches that she was shown in physical therapy two to three times per week. *Id*. Petitioner further stated, "I do not feel like surgery is an option at this time. I would rather deal with the pain for now." *Id.* at 2.

V. **Analysis**

   a. **Six Month Sequela**

In order to state a claim under the Vaccine Act, a petitioner must establish the "severity" requirement demonstrating that the vaccinee has either:

5

> (i) suffered the residual effects or complications of such illness, disability, injury, or condition for more than 6 months after the administration of the vaccine, or (ii) died from the administration of the vaccine, or (iii) suffered such illness, disability, injury, or condition from the vaccine which resulted in inpatient hospitalization and surgical intervention.

§11(c)(1)(D).

In this case, to satisfy the Vaccine Act's severity requirement, Ms. Portock must show that she suffered symptoms of her alleged SIRVA beyond April 21, 2021. Respondent argues that Petitioner last sought medical care for her left shoulder on March 2, 2021, approximately four and a half months after her vaccination. Response at 5. Respondent noted that Petitioner stated in her affidavit that she would "rather deal with the pain for now" than continue PT or have surgery. *Id*. However, Respondent also noted that PT and surgery were not the only options available to Petitioner. *Id*. Ms. Portock was offered a cortisone injection twice by her orthopedist and refused. *Id*. Respondent argued that "Petitioner's explanation for not seeking additional medical care for her shoulder is not sufficiently compelling to overcome the objective evidence that her injury falls well short of satisfying the statutory severity requirement," and thus, she has not met her prima facie burden of proof under the Vaccine Act. *Id*.

In many cases, a treatment gap that overlaps with the deadline for the six-month severity "endpoint," measured from the date of onset, does not bar a finding of severity. *See* e.g., *Law v. Sec'y of Health & Hum. Servs*., No. 21-0699V, 2023 WL 2641502, at *5 (Fed. Cl. Mar. 27, 2023); *Kilgore v. Sec'y of Health & Hum. Servs.,* No. 21-1390V, 2023 WL 7130175, at *6 (Fed. Cl. Sept. 29, 2023); *Grieshop v. Sec'y of Health & Human Servs.*, No. 14-119, 2015 WL 4557620, at *5–6 (Fed. Cl. Spec. Mstr. June 5, 2015). A failure to seek treatment during such a gap does not inherently mean an individual's SIRVA-related pain has ceased, since claimants often live with the pain, based upon the expectation it will subside, or because of the reasonable desire to avoid unnecessary treatment.

Here, the mix of evidence preponderates in favor of a favorable severity finding. Respondent's argument hinges on the fact that Petitioner did not seek additional treatment for her shoulder. However, the question is whether Petitioner's injury persisted beyond the six-month mark, not whether Petitioner *availed herself* of available therapies. And evidence in the record suggests Petitioner did continue to suffer SIRVA-related symptoms longer than six months post-vaccination, even if she did not seek treatment for them.

Particularly persuasive is the fact that at Ms. Portock's last treatment appointment on March 2, 2021, Dr. Cohn discussed surgery options with Petitioner, indicating the view that Petitioner's injury was severe enough to warrant scheduling surgery at that time. And just one month prior (on February 2, 2021), Dr. Cohn had noted that Petitioner was "markedly" and "very" symptomatic, ordering an MRI to evaluate Petitioner's underlying condition. Ex. 4 at 12. If Petitioner had done what Respondent has insinuated, i.e., received a steroid injection, there is no guarantee that her shoulder symptoms would have resolved at that time. And there is no question that if Petitioner had indeed undergone surgery, her left shoulder injury would have persisted well beyond the six-month mark. Thus, I find that all of the above is supportive of severity in this case. (At worst, the lack of treatment after the six-month mark simply means this is a case in which damages will not be high – and Petitioner should fashion any demand with that in mind).

Accordingly, the record preponderates in favor of the conclusion that Petitioner's SIRVA likely continued – and thus Petitioner has established that she suffered the residual effects of her left shoulder injury for more than six months.

### b. Table SIRVA Injury

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). In addition to requirements concerning the vaccination received, the duration and severity of petitioner's injury, and the lack of other award or settlement,[4] a petitioner must establish that he suffered an injury meeting the Table criteria, in which case causation is presumed, or an injury shown to be caused-in-fact by the vaccination she received. Section 11(c)(1)(C).

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a). Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48 hours of the administration of an influenza vaccine. 42 C.F.R. § 100.3(a)(XIV)(B). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following (set forth in the Table's Qualifications and Aids to Interpretation ("QAI")):

---

[4] In summary, a petitioner must establish that he received a vaccine covered by the Program, administered either in the United States and its territories or in another geographical area but qualifying for a limited exception; suffered the residual effects of her injury for more than six months, died from his injury, or underwent a surgical intervention during an inpatient hospitalization; and has not filed a civil suit or collected an award or settlement for her injury.  *See* § 11(c)(1)(A)(B)(D)(E).

> (i) No history of pain, inflammation, or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;
>
> (ii) Pain occurs within the specified time frame;
>
> (iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and
>
> (iv) No other condition or abnormality is present that would explain the patient's symptoms (*e.g.*, NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10).

In the Response, Respondent states that but for the failure to meet the six-month severity requirement, "Petitioner's claim otherwise appears to satisfy the criteria set forth in the Table and the Qualifications and Aids to Interpretation for SIRVA. *See* 42 C.F.R. §§ 100.3(a)(XIV)(B), 100.3(c)(10)." Resp. at 5, fn. 4. Thus, I find that Petitioner has met the QAI requirements for a Table SIRVA injury.

### A. Other Requirements for Entitlement

In addition to establishing a Table injury, a petitioner must also provide preponderant evidence of the additional requirements of Section 11(c). The overall record contains preponderant evidence to fulfill these additional requirements.

The record shows that Ms. Portock received a flu vaccine intramuscularly in her left shoulder on October 21, 2020. Ex. 2 at 9-10; *see* Section 11(c)(1)(A) (requiring receipt of a covered vaccine); Section 11(c)(1)(B)(i)(I) (requiring administration within the United States or its territories). There is no evidence that Petitioner has collected a civil award for her injury. Petition at 6; Section 11(c)(1)(E) (lack of prior civil award).

Based upon all of the above, Petitioner has established that she suffered a Table SIRVA. Additionally, she has satisfied all other requirements for compensation. I therefore find that Petitioner is entitled to compensation in this case.

## VI. CONCLUSION

For the reasons set forth above, I find that Petitioner has met the six-month severity requirement and has also satisfied the Table requirements for a SIRVA injury. I, therefore, find that Petitioner is entitled to compensation. A separate damages order will be issued.

IT IS SO ORDERED.

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master
